

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

JOHN BEN SHEPPERD
ATTORNEY GENERAL

Honorable L. A. Woods
State Superintendent
Department of Education
Austin, Texas

Dear Sir:

Opinion No. O-5716
Re: Authority of Legislature
to name State Superintendent
of Public Instruction as
Executive Officer of the
State Board for Vocational
Education, and related
questions.

We acknowledge receipt of your three recent communications, dated November 15, 1943, November 29, 1943, and December 6, 1943, which read as follows:

"Please find enclosed a 1943 Supplement to the 1941 Public School Laws of Texas which contains the laws providing for vocational education in Texas. The text of the state law begins on page 48 and is entitled 'H. B. No. 239' and continues on page 49. Following this law on page 50 and continuing through page 53 will be found the text of the George-Deane Vocational Act. Following page 53 is the beginning of the text of the Smith-Hughes Act, which continues through page 62.

"There have been no changes in the above mentioned Federal Acts with the exception of the elimination of the Federal Board for Vocational Education and the placing of the administration of this program under the United States Commissioner of Education.

"On page 32 of this Supplement I want to call your attention to the appropriation for vocational education in Texas, made by the Texas State Legislature during its Forty-eighth Session. You will note that Section 4 reads as follows:

"'The State Board for Vocational Education, through its Executive Officer, the State Superintendent, is hereby authorized to receive and disburse in accordance with plans acceptable to the responsible Federal Agency, all Federal moneys that are made available to the State of Texas for such purposes as training personnel for National Defense Industries, and for such other activities as come under the authority of the State Board for Vocational Education.' (Underscoring mine.)

"You will also note that in H. B. No. 239, referred to above, the Legislature names the State Board of Education as the State Board for Vocational Training in the Public Schools of this State. This makes both the State Board for Vocational Education and the Executive Officer creatures of the Legislature.

"The State Board for Vocational Education has prepared a plan for the Food Production War Training Program in which they are eliminating the State Superintendent of Public Instruction as the Executive Officer of the State Board for Vocational Education. A copy of this plan is enclosed. In all state vocational plans which have been written heretofore, the State Superintendent has been made the Executive Officer of the Board. The law originally did not name the State Superintendent as Executive Officer, but the Forty-seventh and Forty-eighth Legislatures did name the State Superintendent as Executive Officer of the State Board for Vocational Education. Before this was done, no doubt, the State Board could have chosen some other person other than the State Superintendent to be its Executive Officer. However, since the Legislature has named the State Superintendent as Executive Officer, the State Board for Vocational Education is proposing to eliminate the Executive Officer, and is proposing to administer the Food Production War Training Program through the director of vocational agriculture.

"I am enclosing copies of three resolutions introduced and passed by the Board at its meeting on November 6, 1943, which show what they are proposing to do.

"There is a general plan for vocational education which was adopted in 1938, in which the State Superintendent was named as the Executive Officer. This plan was to expire June 30, 1942. In May, 1942, the State Board for Vocational Education voted to

extend this plan for another five years; therefore, this plan will be in effect until June 30, 1947. Since the writing of this long-term general plan, the Legislature has again specifically named the State Superintendent as the Executive Officer of the State Board for Vocational Education, as is shown in the appropriation bill for this biennium the same as in the appropriation bill for the last biennium.

"The federal money appropriated for the Food Production War Training Program is a supplement to the other appropriations made by the Federal Government for vocational education. The people who administer this program must do so through the public schools of this State, which fact involves the rights and prerogatives of the State Superintendent of Public Instruction.

"In view of the above mentioned facts, I should like to submit for your consideration and opinion the following questions:

"1. Does the Legislature have the same authority to name the State Superintendent of Public Instruction as Executive Officer of the State Board for Vocational Education as it does to name the State Board of Education as the State Board for Vocational Education?

"2. Is the State Superintendent of Public Instruction, under the laws referred to herein, the Executive Officer of the State Board for Vocational Education?

"3. If you answer in the affirmative, then can the State Board for Vocational Education, at its discretion, eliminate the State Superintendent as Executive Officer and proceed to administer Vocational funds according to an agreement between themselves and the United States Commissioner of Education in Washington?

"4. Since the Food Production War Training Program is supplementary to the regular vocational agriculture program, and the state plan for vocational agriculture names the State Superintendent as Executive Officer; and since Section 4 of H. B. No. 239

designates the State Superintendent
as the Executive Officer of the State
Board for Vocational Education, with
authority to 'receive and disburse in
accordance with plans acceptable to
the responsible Federal Agency, all
Federal moneys that are made avail-
able to the State of Texas for such pur-
poses as training personnel for National
Defense Industries, and for such other
activities as come under the authority
of the State Board for Vocational Educa-
tion,' does the State Board for Vocational
Education have the right, at its discretion,
to eliminate the State Superintendent as
its Executive Officer in its state plan and
administer the Food Production War Train-
ing Program without him/"

From Letter of November 29, 1943:

"On November 15, 1943, I submitted for your con-
sideration and opinion four questions dealing with the re-
lationship which should exist between the State Board for
Vocational Education and its Executive Officer.

"May I submit a supplement to that request and ask
you to number this question as 2-a.

"May the State Comptroller of Public Accounts con-
tinue to issue warrants upon the signature of the Executive
Officer of the State Board for Vocational Education for ex-
penditures which have been made by the State Board for Vo-
cational Education?"

Letter of December 6, 1943:

"On November 15th I submitted for your consideration
several questions regarding the official relationships which
exist between the State Superintendent and the State Board for
Vocational Education regarding the administration of the voca-
tional divisions.

"The Legislature has from biennium to biennium appro-
priated money for the various divisions of government, including
the State Department of Education and the State Board of Educa-
tion. In the appropriation for the State Department of Education

there was appropriated money for salaries, traveling expenses, and contingent funds for the operation of the various divisions.

"I would like to submit for your consideration and opinion the following questions:

"5. Is it not a fact that the State Board of Education and the State Department of Education are two separate entities of government?

"6. Is it not a fact that the Vocational Division is part of the State Department of Education, as is indicated in the appropriation bill?

"7. Is the State Superintendent of Public Instruction responsible for the administration of all divisions of the State Department of Education, including the vocational divisions, for which the Legislature has appropriated money?

"8. Is it not a fact that the State Superintendent has the authority to appoint the personnel of the State Department of Education and control their educational activities?"

## VOCATIONAL EDUCATION

Section 5 of the Smith-Hughes Act, approved February 23, 1917, and which is contained in your 1943 Supplement to the 1941 Public School Laws of Texas, (U.S.C.A., Title 20, Chapter 2) reads as follows:

"Sec. 5. That in order to secure the benefits of the appropriations provided for in sections two, three and four of this Act, any State shall, through the legislative authority thereof, accept the provisions of this Act and designate or create a State board, consisting of not less than three members, and having all necessary power to cooperate as herein provided, with the Federal Board for Vocational Education in the administration of the provisions of this Act. The State Board of Education, or other board having charge of the administration of any kind of vocational education in this State, may, if the State so elect, be designated as the State Board, for the purpose of this Act." (Emphasis ours)

Section 13 of said Act requires any State, in order to receive the Federal appropriations provided for thereunder, to appoint, by its legislative authority, its State Treasurer as custodian of said Federal appropriations.

H. B. 239, Thirty-eighth Legislature, Chapter 131, which provides for vocational education in Texas, and the acceptance of benefits under the Smith-Hughes Act, was approved March 24, 1923, and became effective the same date. This H. B. 239 also validates previous acceptances by the State of such benefits, and designates the State Treasurer as custodian of all funds allotted the State from appropriations under said Act. It also designates the State Board of Education as the State Board of Vocational Education, "with necessary authority and power to cooperate with the Federal Board of Vocational Education, as provided and required by said Act of Congress, in the administration of the provisions of said Act; and to do all things necessary to entitle the State to receive the full benefits thereof." While said H. B. 239 does not appear in our Revised Statutes, it has been kept in force and effect in Texas by Section 6 of the Final Title thereof. (Emphasis ours).

The purpose of the Smith-Hughes Act, passed by Congress in 1917, was to provide for the promotion of vocational education in cooperation with the States in the fields of agriculture, home economics, trades and industries.

The George-Deen Act, passed by Congress and approved June 8, 1936, and being Public Law No. 673, Seventy-fourth Congress, authorized supplementary appropriations for promoting and conducting vocational education in agriculture, home economics, trade and industrial subjects, and, in addition thereto, distributive occupational subjects.

## VOCATIONAL REHABILITATION

The promotion of vocational rehabilitation was first provided for by an Act of Congress approved June 2, 1920. Said Act as amended (U.S.C.A., Title 29, Chapter 4) has recently been amended by Public Law 113, 78th Congress, Chapter 190, 1st Session of said Congress, approved July 6, 1943. The first section of said Public Law 113 provides for payments to States which have submitted and had approved by the Federal Security Administrator State plans for vocational rehabilitation. Section 2 (a) of said Law and subdivisions (1) and (2) thereunder read as follows:

"Sec. 2 (a) To be approvable under this Act, a State plan for vocational rehabilitation shall —

"(1) designate the State Board of vocational education * * * as the sole agency for the administration, supervision, and control of the State plan; * * *

"(2) provide that the State treasurer * * * be appointed as custodian of funds received under this Act from the Federal Government * * * " (Emphasis ours)

By Acts of 1929, 41st Legislature, 1st C.S., p. 57, Ch. 23, (Art. 2675-1, Secs. 1 and 2, R. S. 1925), the Legislature of Texas accepted the provisions and benefits of said original Rehabilitation Act of Congress, as then amended June 5, 1924, and authorized and empowered the Treasurer of Texas to receive said Federal funds "and to make disbursements therefrom upon the order of the State Board for Vocational Education." (Emphasis ours) Said State Board of Vocational Education was also "empowered and instructed to cooperate with the terms and conditions expressed in said Act of Congress aforesaid."

## FOOD PRODUCTION WAR TRAINING PROGRAM

The Federal funds appropriated for the Food Production War Training Program are supplementary to the other appropriations made by the Federal Government for vocational education. Public Law 135, Seventy-eighth Congress, Chapter 221, First Session, approved July 12, 1943, authorizes the United States Office of Education to make payments to the States for the "cost of vocational courses in food production and conservation, mechanics, farm-machinery repair, and farm labor training," etc. The amount appropriated for said purposes in $12,500,000, including the purchase and rental of equipment and rental of space. (See paragraph 3 of said Public Law 135 under the heading of "Education and Training, Defense Workers, § National Defense § )."

It should also be observed that the first paragraph of said Public Law 135, under the heading aforesaid, reads as follows:

"Payments to States, and so forth (national defense): For payment to States, subdivisions thereof, or other public agencies operating public educational facilities, * * * for the furtherance of the education and training of defense workers, through certification from time to time, in accordance with regulations promulgated by the United States Commissioner of Education, (hereinafter referred to as the 'Commissioner') under the

supervision and direction of the Federal Security Administrator and approved by the President, by the Commissioner to the Secretary of the Treasurey of the name of such agency * * * to whom payment is to be made, and the amount to be paid." etc. (Emphasis ours)

By reason of said provision just quoted, all funds provided for in said paragraph 3, above referred to, must be certified for payment to the States in accordance with regulations promulgated by the United States Commissioner of Education under the supervision and direction of the Federal Security Administrator and approved by the President. Accordingly, such regulations were issued by the United States Commissioner of Education on September 24, 1943. Same were approved on September 25, 1943, by Honorable Paul V. McNutt as Federal Security Administrator and Chairman of the War Manpower Commission, and were approved onSeptember 28, 1943, by the President. Sections 2/18 to 2.25, inclusive, of said regulations are under the heading "Food Production War Training Courses Conducted Under Subdivision (3) of the Act." (Public Law 135 aforesaid)

Section 2.19 reads as follows:

"Purpose of requirement of State Plans. The basic condition to the approval of courses, acquisition of equipment, rental of space and payment of the budgeted costs thereof from the foregoing appropriation is the submission of agency proposals in conformity with underlying plans of the State agency, as approved by the Director. The purpose of this requirement in the Act is to insure continued and Mutual understanding at the State and Federal levels that the courses and training thereby provided as well as all other activities of the State in connection with this food production war training program are maintained in close harmony and effective coordination with the development of the war production program as a whole." (Emphasis ours)

The Director referred to in said section is the officer in the United States Office of Education who is charged by the United States Commissioner of Education with the chief responsibility of carrying out the food production war training program. (Section 2.1(d) of said Regulations)

The second paragraph of said Section 2.19 provides that State plans shall be formulated for the most effective use of training facilities, etc., and for said purpose the "State Boards for Vocational Education are to submit new plans or to amend existing plans as may be necessary to bring them into conformity with the Act (Public Law 135 aforesaid) and these regulations." (Emphasis ours)

Section 2.21 of said Regulations reads as follows:

"Sec. 2.21 - Bases of administration, coordination, and supervision. State plans should develop the following bases of administration, coordination, and supervision:

"(a) State Board for Vocational Education. The basic jurisdiction of the State Board for Vocational Education as the authority responsible for phases of the training program within the State and the use of the State's training facilities is recognized. Each State plan shall indicate the designation or appointment of a State Director of food production war training who shall be a full time employee of the State Board for Vocational Education qualified in the field of vocational education. The State plan shall provide that his appointment shall be subject to the approval of the Director [Federal Director as above referred to ] and that he shall carry out the policies of the State Board and assume responsibility for the preparation and submission of State plans, reports, budgets and accounting in compliance with all State and Federal requirements.

"The Responsibility for making applications for approval of courses rests with the local public school authorities conducting the food production war training program and the responsibility for approving such courses rests with the State Director of Food Production War Training." (Emphasis ours)

At this point we call attention to the fact that the term "Executive Officer" is nowhere used or provided for in the Regulations just discussed. They do provide for a State Director, who shall be a full-time employee of the State Board for Vocational Education.

## PREVIOUS OPINIONS

We now refer to three former opinions of this Department dealing with questions concerning vocational education and vocational rehabilitation.

(a) In Conference Opinion No. 2905, rendered January 16, 1933, which deals with vocational education, it was held that the State Board of Vocational Education had the authority to appoint the employees of the Department of Vocational Education; that said Board could modify its order making the State Superintendent its executive officer with power to appoint the employees of the Vocational Educational Department and divest the State Superintendent of said appointive power; and

that if said Board should divest the State Superintendent of said power previously granted, the State Board could then resume the power it had delegated and thereafter appoint the persons in said department.

(b) In Opinion No. 0-4265, rendered January 27, 1942, dealing with vocational education, it was held that the interpretations placed upon the vocational education acts by the United States Office of Education (then a unit of the Department of Interior, but not a unit of the Federal Security Agency) were binding upon us, since that agency (the Department of Interior) was charged with their administration for the Federal Government, without the sanction of which the State of Texas would receive none of the Federal moneys.

In this connection, attention is now directed to Misc. 2600 Revised July 1943, in question and answer form entitled "Food Production War Training," and issued by the Federal Security Agency, United States Office of Education. This Revised Misc. 2600 is the official statement concerning the Food Production War Training Program and the official interpretation of the Regulations in connection therewith promulgated by the United States Commissioner of Education under the supervision and direction of the Federal Security Administrator and approved by the President. These regulations have heretofore been referred to in this opinion.

The last paragraph on page 1 of said Miscellany reads as follows:

"The State Director of Food Production War Training is the person designated by the State Board for vocational education and approved by the Director (Federal Director) as the person who is charged with the responsibility for administering this Food Production War Training Program in the State and hereinafter will be referred to as the State director."

Question 17 reads as follows:

"Who will make and approve the appointment of new employees on the State level?

"Answer: Additional personnel to be employed on the State level by the State board for vocational education shall be appointed in accordance with qualifications prescribed in the approved State plan for the Food Production War Training Program.

"The qualifications of administrative and supervisory personnel must conform to the standards set forth in the State plan and shall be submitted to the Director (Federal Director) for approval.

"Additional personnel to be employed on the State level shall be appointed by the State board for vocational education or by the State director when * * * given authority by the State board * * *" (Emphasis ours)

(c) Opinion No. O-5630, rendered by this Department on October 9, 1943, deals with vocational education and vocational rehabilitation. Said opinion has particular application to the questions now under consideration, and the following conclusions were reached therein:

(1) The State Superintendent of Public Instruction is the Executive Officer of the State Board for Vocational Education by virtue of his appointment by said board, under the plan theretofore adopted, and not by virtue of his election as State Superintendent.

(2) The Legislature did not intend to change the law under which the State of Texas accepted Federal funds for vocational education and rehabilitation by passing H. B. 219, Chap. 374, 48th Legislature, which is an appropriation bill. Its reference therein to the State Superintendent as the Board's Executive Officer was by reason of his previous appointment as such by said Board.

(3) By such reference in said appropriation bill, the Legislature evidently intended to refer to the State Superintendent as such appointed Executive Officer, and that his acts would be under and in accordance with the plans and with the approval of said Board.

If contention is made that we were in error in the reasons assigned for the foregoing conclusions, there is nevertheless, a fundamental principle that must not be overlooked. Section 35, Article 3 of our State Constitution provides as follows:

"No bill, (except general appropriation bills, which may embrace the various subjects and accounts for and on account of which moneys are appropriated), shall contain more than one subject, which shall be expressed in the title. But if any subject shall be embraced in an Act, which shall not be expressed in the title, such Act shall be void only as to so much thereof, as shall not be so expressed." (Emphasis ours)

It is well settled that legislation of a general character cannot be included in an appropriation bill. State v. Smith, State Auditor, (Mo. Sup. Ct) 75 S.W. (2d) 828. While an appropriation bill may have a plurality of subjects, same must be confined to the meaning of its terminology. They must not include subjects for general legislation. If such are included, they are unconstitutional and void. The remainder of such an appropriation act is valid where the valid part thereof may be separated from the void. State v. Thompson, (Mo.Sup.Ct.) 289 S.W. 338. Also see King v. Sheppard, (Tex.Civ.App.) 157 S.W.(2d) 682, error ref., and Linden v. Finley, Comptroller, (Tex.Sup.Ct.) 49 S.W. 578.

Obviously, therefore, the Texas Legislature was not attempting to amend, by its reference to the State Superintendent as Executive Officer, in the appropriation bill as aforesaid, any of the general laws providing for vocational education and rehabilitation, then in existence. Had it done so, the attempted amendment would be violative of Section 35, Article 3, Texas Constitution, and therefore void. The only manner in which general laws can be amended is by general legislation and not in appropriation bills.

## INAPPLICABLE STATUTES

Our attention has been directed to Articles 2656 and 2657, Revised Statutes, 1925. They constitute recodified sections of Acts of 1905, page 263, known as S. B. 218, 29th Legislature, Chapter 124. The first part of its caption reads as follows:

"An Act to provide for a more efficient system of public free schools for the State of Texas."

Article 2656 deals with the general duties of the State Superintendent, among which are the following:

"He shall examine and approve all accounts against the School funds that are to be paid by the State Treasurer, and, upon such approval, the Comptroller shall be authorized to draw his warrant. He may employ such clerks to perform the duties of his office as may be authorized by appropriations therefor." (Emphasis ours)

In this connection, it was pointed out in Conference Opinion No. 2905, hereinabove referred to, that this article authorized the State Superintendent to appoint clerks where there are appropriations made for that purpose and where such clerks are to perform the duties of his office.

It was further held therein that said article was inapplicable to employees engaged in the vocational education divisions and that such employees are not clerks of the State Superintendent. As was therein observed, the employment of personnel, under the statutes and state-federal plans relative to vocational education, is by specific legislative recognition the function of the State Board for Vocational Education.

Nor is the State Superintendent required by said article to examine and approve accounts payable from appropriations made for the support of the vocational education program.

It is also obvious that the school funds referred to in Article 2656, against which the State Superintendent shall examine and approve accounts, are the available school funds for the support and maintenance of the public free schools of this State and which are to be paid by the State Treasurer. (See Sec. 10 of S. B. 218, 29th Legislature, Chap. 124, p. 263; also Arts. 2663 and 2665, R. S., 1925). State and/or Federal funds appropriated for vocational education and rehabilitation are appropriated for those specific purposes as provided by specific legislation, and are not under the control of the State Superintendent of Public Instruction.

Article 2657 requires the State Superintendent to advise and counsel with the school officers of the counties, cities and towns, and school districts as to the best methods of conducting the public schools. It also empowers said Superintendent to issue instructions and regulations binding for the observance on all officers and teachers in all cases wherein the provisions of the school law may require interpretation, etc. By no stretch of imagination can the provisions of this Article be applied to the administration of vocational education and rehabilitation, the subject now under consideration.

## DEPARTMENTAL APPROPRIATION BILL

We will now consider certain provisions of S. B. 332, Chapter 400, Acts of the 48th Legislature, page 865, which is the current appropriation bill for the support and maintenance of the Executive and Administrative Departments and Agencies of our State Government. Under the heading "State Department of Education," we find on pages 923-924 of said Acts, various items of appropriation for the "Vocational Education Division (out of Vocational Services Appropriation)." On pages 924-925 are listed items of appropriation for the "Vocational Rehabilitation Division (out of appropriation for Vocational Rehabilitation)."

The rider appearing at the end of the appropriations for the Vocational Education Division reads as follows:

"All expenditures authorized in connection with administering Vocational Education Aid shall be matched with Federal Funds except where such matching is prohibited by Federal regulations and all State Expenditures shall be made out of funds appropriated for Vocational Aid. * * *

"Provided that the foregoing itemized appropriations for salaries and expenses in the administration of Vocational Education shall be paid out of the appropriation for Vocational Education Aid, and shall be prorated between the allocations for Vocational Agriculture, Home Economics and Trades and Industries in the proportions that the itemized appropriations apply to the respective allocations. The State Superintendent shall advise the Comptroller in writing the sums to be set up out of each of the above three allocations to cover the administrative appropriations."
(Emphasis ours)

The rider following the appropriations for the Vocational Rehabilitation Division is as follows:

"Subject to the limitations set forth in the provisions appearing at the end of this Act, the items above provided for Vocational Rehabilitation shall be paid out of the Special Appropriation made for Vocational Rehabilitation Aid."

The appropriations for Vocational Education and Rehabilitation are provided for in H. B. 219, Chapter 374, Acts of the 48th Legislature, page 670.

Thus, while said Divisions of Vocational Education and Vocational Rehabilitation are listed under the heading "State Department of Education" in said appropriation bill, does it follow from said listings that said divisions are units of the State Department of Education? We think not. For the same reasons advanced in our previous Opinion No. O-5630, hereinbefore referred to and discussed, and for the additional reasons hereinbefore set forth, we feel that the Legislature did not thus intend to change the law under which the State of Texas accepted Federal funds for vocational education and rehabilitation. It knew that the State Superintendent was the Executive Officer of the State Board of Vocational Education by appointment of said Board. It evidently intended, by its reference to the State Superintendent in the

It was further held therein that said article was inapplicable to employees engaged in the vocational education divisions and that such employees are not clerks of the State Superintendent. As was therein observed, the employment of personnel, under the statutes and state-federal plans relative to vocational education, is by specific legislative recognition the function of the State Board for Vocational Education.

Nor is the State Superintendent required by said article to examine and approve accounts payable from appropriations made for the support of the vocational education program.

It is also obvious that the school funds referred to in Article 2656, against which the State Superintendent shall examine and approve accounts, are the available school funds for the support and maintenance of the public free schools of this State and which are to be paid by the State Treasurer. (See Sec. 10 of S. B. 218, 29th Legislature, Chap. 124, p. 263; also Arts. 2663 and 2665, R. S., 1925). State and/or Federal funds appropriated for vocational education and rehabilitation are appropriated for those specific purposes as provided by specific legislation, and are not under the control of the State Superintendent of Public Instruction.

Article 2657 requires the State Superintendent to advise and counsel with the school officers of the counties, cities and towns, and school districts as to the best methods of conducting the public schools. It also empowers said Superintendent to issue instructions and regulations binding for the observance on all officers and teachers in all cases wherein the provisions of the school law may require interpretation, etc. By no stretch of imagination can the provisions of this Article be applied to the administration of vocational education and rehabilitation, the subject now under consideration.

## DEPARTMENTAL APPROPRIATION BILL

We will now consider certain provisions of S. B. 332, Chapter 400, Acts of the 48th Legislature, page 885, which is the current appropriation bill for the support and maintenance of the Executive and Administrative Departments and Agencies of our State Government. Under the heading "State Department of Education," we find on pages 923-924 of said Acts, various items of appropriation for the "Vocational Education Division (out of Vocational Services Appropriation)." On pages 924-925 are listed items of appropriation for the "Vocational Rehabilitation Division (out of appropriation for Vocational Rehabilitation)."

The rider appearing at the end of the appropriations for the Vocational Education Division reads as follows:

"All expenditures authorized in connection with administering Vocational Education Aid shall be matched with Federal Funds except where such matching is prohibited by Federal regulations and all State Expenditures shall be made out of funds appropriated for Vocational Aid, * * *

"Provided that the foregoing itemized appropriations for salaries and expenses in the administration of Vocational Education shall be paid out of the appropriation for Vocational Education Aid, and shall be prorated between the allocations for Vocational Agriculture, Home Economics and Trades and Industries in the proportions that the itemized appropriations apply to the respective allocations. The State Superintendent shall advise the Comptroller in writing the sums to be set up out of each of the above three allocations to cover the administrative appropriations." (Emphasis ours)

The rider following the appropriations for the Vocational Rehabilitation Division is as follows:

"Subject to the limitations set forth in the provisions appearing at the end of this Act, the items above provided for Vocational Rehabilitation shall be paid out of the Special Appropriation made for Vocational Rehabilitation Aid."

The appropriations for Vocational Education and Rehabilitation are provided for in H. B. 219, Chapter 374, Acts of the 48th Legislature, page 670.

Thus, while said Divisions of Vocational Education and Vocational Rehabilitation are listed under the heading "State

Department of Education" in said appropriation bill, does it follow from said listings that said divisions are units of the State Department of Education? We think not. For the same reasons advanced in our previous Opinion No. O-5630, hereinbefore referred to and discussed, and for the additional reasons hereinbefore set forth, we feel that the Legislature did not thus intend to change the law under which the State of Texas accepted Federal funds for vocational education and rehabilitation. It knew that the State Superintendent was the Executive Officer of the State Board of Vocational Education by appointment of said Board. It evidently intended, by its reference to the State Superintendent in the first rider above quoted, to refer to him as such Executive Officer of said Board, and that his acts would be in accordance with the plans and with the approval of said Board.

Also, we must look to the purposes for which appropriations are made, rather than to their listings. These appropriations were made for vocational education and vocational rehabilitation, the administration of which had theretofore been delegated by the Legislature to the State Board of Vocational Education. Any deviation or inconsistency in their placement in the appropriation bill could not change the purposes for which they were made or the administration of said funds. It is reasonable to assume that such listings were so made because of the fact that the State Superintendent had theretofore been appointed by said Board as its Executive Officer. If we are in error as to this, it suffices to say that improper listings of appropriation items cannot and does not change the purposes for which they are made or their administration.

### QUESTIONS ANSWERED

Based on the foregoing conclusions, your questions in the order submitted are answered as follows:

1. Yes. It is beyond question that our Legislature has the power to amend previous statutes provided such amendments do not conflict with any of the provisions of our State and Federal Constitutions.

In fact, all legislative power in Texas not withheld expressly or by implication by said Constitutions is vested in our Legislature. Brown v. City of Galveston, (Sup. Ct. of Texas) 75 S. W. 488; Vincent v. State, (Com. App., adopted by Sup. Ct.) 235 S. W. 1084; Art. 3, Sec. 1, State Constitution. But these general statutes relating to vocational education and rehabilitation have not been amended or repealed. They are, therefore, in full force and effect, and their provisions must be respected.

2. No.

3. No answer required.

4. Yes.

2-a. By its recent adoption of the resolutions submitted to us, in your first communication, the Board for Vocational Education has provided for its approval of all future administrative disbursements from either State or Federal funds. It has also provided for its approval of all future items of expense and payments to be made as well as other necessary expenditures of the office of State Director of Homemaking Education. It has likewise provided for its approval of all items of expense and payments, as well as other necessary expenditures of the Office of the State Director of Rehabilitation Education. This question is therefore answered in the negative.

5. As generally understood, they are separate entities.

6. The Vocational Division is not a part of the State Department of Education. It is an entity of the State Department of Vocational Education.

7. The State Superintendent of Public Instruction is responsible for the administration of all divisions of the Office of State Superintendent. He is not responsible for the administration of the vocational divisions. Such responsibility is vested in the State Board of Vocational Education.

8. The State Superintendent has the authority to "employ such clerks to perform the duties of <u>his office</u> as may be authorized by appropriations therefor." (Article 2656, R. S., 1925) (Emphasis ours).

It not being clear just what is meant by the clause "and control their educational activities," no answer is given in connection therewith.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By L. H. Flewellen
Assistant

LHF:EP

